Good morning, your honors. My name is Emmanuel Akudinobi, and I represent the appellants in this case. I would like to reserve five minutes of my time for rebuttal. Okay. Your honor, there are many issues presented in this appeal. However, we believe that all the issues we raised are grounds for reversal of the appeal, excuse me, of the decision of the jury in the sense that the appellants were denied their constitutional rights to a fair trial. Counsel, there are two different proceedings at issue here, and we've already decided that in the murder trial, Gantt did not receive a fair trial. But the malicious prosecution and fabrication of evidence are different. I frankly have difficulty understanding why the record shows either that the police knew he was innocent or that they invented some evidence, fabricated it, creating a document that wasn't real or anything of that nature. It looks like basically the matchbook should have been produced. It was pretty important, and it wasn't. And there doesn't seem to be any evidence that the reason they didn't produce the matchbook was that they knew he was innocent. It looks like they were just cheating to get a conviction without revealing all the evidence to the defense. Why does it – why do the things they did wrong entitle you to any remedy for malicious prosecution or fabrication of evidence? You know, the things that they did wrong warrants a finding for fabrication of evidence or malicious prosecution in the sense of when you look at the definition of fabrication of evidence, for instance, if somebody promises a witness a reward in order to elicit their testimony, that's part of fabrication of evidence. I think if somebody had a witness who said, I saw X, and the witness was pressured by some irresistible pressure to lie and say, I saw Y, and the prosecution knowingly put on the perjury, that would probably satisfy your categorization. However, here, I can't see that that happened. It happened in the sense that, one, Mr. Roseman was told, is that are you a witness or we pin the crime on you? Mr. Roseman told him, I'm tired. They knew he was strung out on crack on a three-day binge. They held him for several hours and kept questioning him. That's not the same thing as telling him to lie and knowing that he's lying. That's putting a lot of pressure on him to talk at all when it might be dangerous. Okay. When you stress that, when you hold somebody against their will and in such a coercive environment that they are forced to tell you something. That's too broad. I mean, so much testimony comes from pressure to do something people don't want to do. Most people rather not testify against criminals because they're afraid of getting hurt. I'll give you a second example here. He was shown pictures that were never contained in the statements he gave to the police officers, and he was told not to talk about it. And these pictures were the pictures of the cars that both Mr. Schultz and Kubias saw. He further went ahead and testified to that car. He testified when he was arrested that, excuse me, he testified during the coercion, during the identification process, that he recognized Gant from the street because Gant may have robbed him. That evidence was kept from the defense. That is an evidence that he could have used to impeach Mr. Rosemond if he took a stand and said he didn't have any animosities. He got understand and testified about cars that he never saw. They knew he never saw those cars, and they suborned that perjury. That is part of the fabrication of evidence. I don't follow it. I mean, everything you're telling me is unfair tactics as opposed to creation of falsehood. It's one thing for overzealous police to push hard to get a conviction of somebody they think is guilty. It's quite another to frame somebody that they think is innocent, and that's what the malicious prosecution is about. When we go through the elements of the malicious prosecution, for instance, and look at the reason why they were pushing for that conviction, remember that this case was rejected by the first prosecutor. And then it was after it was rejected that all these other issues came up. They wanted to get a conviction in order to enhance the clearance rate. And in that lies the violation of the constitutional right that Mr. Gant and Mr. Smith has to fair trial. You do not stack evidence against somebody Let me frame my question a little more narrowly. Exactly what evidence was fabricated? They promised him a reward? No, that's not evidence. Evidence that came before the jury that was fabricated, either perjured testimony known to the prosecution to be perjured, a document known to be created after the fact, something like that. Some false evidence as opposed to unfair tactics. I take two. Okay. Rosamond, the issue of the car that he testified to, that car was never contained in any of the statements that he gave to the police. In his deposition, he said that they showed in documents, including a car, that he was not to tell anybody that it was shown to him. He wasn't shown pictures. Go to Kevin Schatz. Wait a minute. What Rosamond evidence was fabricated? I missed a word there. The issue of the vehicles that the suspect was riding in was fabricated. Vehicle? Yes. Rosamond never, in any of the statements he gave to the police, on the two occasions they questioned him in October, said anything about any vehicle. And if the trial transcript is read, when he was cross-examined on that vehicle, he was all over the place. How do we know it's fabricated? Because he said, in his deposition in the civil case, after he refused to get on the stand to continue lying for them, he said, they showed me things that I was not supposed to see, including the vehicle. Okay. Now, what's the second item of fabricated evidence? The second item of fabrication evidence that goes with subordination. Not fabrication of evidence. I want to know what evidence came in before the jury in the murder trial that was fabricated. The testimony regarding Mr. Smith's beards. Being clean shaven or not being clean shaven. The officers sat down there, knew that Mr. Smith was not clean shaven when he was arrested. Well, this was the accountant, right? I beg your pardon? The accountant is the one who said once he was clean shaven and once he had a mustache? Exactly. That goes to the issue of the fabrication also and the subordination of evidence. Why is that fabrication as opposed to just a vague memory that thinks one thing one time, one thing another time? Because the officers have a duty to make sure that the identification in this case is legit. They knew going in that Mr. Schultz failed to identify, excuse me, made a false identification of Mr. Wilson, which he said was positive. This is the guy. Mr. Wilson did not have any facial hairs if you look at the excerpts of the record that we submitted. Mr. Smith, when he was arrested, had facial hairs and had dreadlocks, yet he identified him. He gets to court and changes the testimony that he was clean shaven on the date of the incident. If you look at the picture of Mr. Smith from January 1991 that was in the mugshot that was used to identify him, and the picture in October 1992 that showed him the mugshot when he was arrested, they are consistent with somebody who was fully bedded and had a dreadlock. Yet he could understand and say he was clean shaven when he saw him on that day. And that in itself is totally wrong. The officers knew that that is not true, and yet they sat down idly. And that was one of the reasons why we requested, because of the trial, to impeach, what's his name, Kevin Schultz, with his prior testimony, and the judge said, I'm not going to allow you to do that. This is an issue of, it's not an issue of his credibility, he made what he made, and all that stuff. And I said, no, your honor, this guy testified, his testimony was material in the conviction, and he got $20,000 reward for that. So here we have officers who knew that this case had been rejected before, and they had to doctor it in order to get it passed. And they had to move the witnesses around through inducements, promise of a reward, show them pictures that they were not supposed to see, and even suborn the perjury. And when you go to the issue of son-in-law Brady, they even failed to disclose to the defense that Mr. Roseman had animosities against Mr. Gant. When you look at it from the totality of the evidence, and then judge that from the definition of fabrication that the judge gave to the jury, you find out that there was a denial of, excuse me, a violation of the due process rights. We have three minutes left, or less than three minutes. Can I save the rest of the time for Roberta? Thank you, your honor. We'll hear from the city. Good morning, your honors. Lisa Berger, deputy city attorney for Appalese. I think, your honor, you've actually pointed out exactly the problem with this whole fabrication of evidence question. There was no fabricated evidence. If that's true, why didn't the judge grant a directed verdict on it? Why did he let it go to the jury? I can't answer what went into the judge's mind. Well, okay. So at least the district judge must have thought it was a jury question. Plus, there were a number of other issues as well. Fabrication was only one of them. But that's the one we're talking about. That's the one we're talking about. But there were a number of causes of action. Okay. So let's stick with the fabrication of evidence. Let's stick with the fabrication of evidence. They introduced evidence of fabrication of evidence. Apparently, Judge Wright agreed that there was sufficient evidence to go to the jury. And their argument is that the jury was not properly instructed. What's your answer to that? The jury was instructed under the Devereaux standard. What the instruction that was not given was a laundry list of all of the things that the jury was instructed to do. And the jury was instructed to find a number of other things as well. And basically would have told the jury, if you find any of these things happened, regardless of whether it meets the Devereaux standard, regardless of whether it led to false evidence, regardless of whether the officers knew there was false evidence, then there's a violation. Would the jury have had to find that the defendants were deliberately indifferent or that what they did was shock the conscience or what? Under the instructions that were given, yes. Deliberate indifference. Both. Shock the conference, but shocks the conscience. But deliberate indifference would be a way of showing shocks the conscience. Isn't shocking the conscience even harder to show than deliberate indifference? No. There's case law that says that where there is time to deliberate, and I believe this is the Lewis v. Sacramento case. And that's our situation. They had time to deliberate. Right. And in those circumstances, deliberate indifference does rise to the level of shocks the conscience. So shock the conscience shouldn't have been involved in the instruction, should it? It is shocking. I mean, the law says that deliberate indifference shocks the conscience. When shocks the conscience was defined, the jury was specifically instructed that deliberate indifference or reckless disregard would rise to the level of shocking the conscience. I couldn't understand the instructions. I looked at instructions. The one that actually jumped out at me the most was on malicious prosecution. The jury was told two different things that contradict each other. They were told that there's a termination on the merits, which is an element. If the dismissal reflects the opinion of the prosecutor, that the action would result in a defense decision. And they were also told that a dismissal alone is not a favorable termination on the merits. And actually, that's just one of many of the contradictions. There are also contradictions on fabrication of evidence. It looked to me like if I was a conscientious juror, I would have to conclude that I haven't the faintest idea what I'm supposed to do. I don't see any inconsistency between saying that the mere dismissal by itself, without anything else, is not a termination. It requires a finding that the termination was based on the prosecution believing that it could not succeed in its case. There can be terminations for any number of reasons. But the second instruction said actual innocence. There has to be proof of actual innocence the second time that this judge gave the instruction. And there's a big difference between a prosecutor saying, I don't think I can win this case and there being proof of actual innocence. You could easily, a prosecutor can still be convinced that the guy's guilty, but for whatever reason, evidence is not there or it's not admissible. And he says, well, I can't win the case. I don't recall the instruction saying that, Your Honor. I apologize. It says it right here. Plaintiff must prove the dismissal reflects an opinion of the prosecutor, which is inconsistent with the belief that the plaintiff is guilty. That's not actual innocence. That's showing that the prosecutor had belief not to proceed with the case. It looks like actual innocence to me. I believe he is not guilty. It's different from I believe he's guilty, but I can't win. My recollection of the record is that the instruction, this is the. Well, why don't you just look at it? Is this the instruction? Why don't you just look at it? I mean, I'm sure you have a yellow sticky and highlighter on the words we're arguing about. So why don't we all just look at them together? I actually did not bring the excerpt of the record, Your Honor. Really? I apologize. I came straight from home and I only had the briefs. But my recollection of the record is that the judge. You didn't know you were coming to court? I did know I was coming to court, Your Honor. Did you know it was Friday? Yes, Your Honor, but I did not take the whole file home with me. That was my error and I apologize. You didn't get up this morning early enough to stop by the office and pick up the file because you thought it might be asked about in court. It did not occur to me. You're going to report this to your supervisor, are you not? I will do that. Maybe we're the only appellate judges that ask about excerpts. I don't know. I make no excuse. There's no excuse to be made. There's no excuse to be made for a lawyer to show up in court without the record or the excerpts of the record. I mean, what are we going to do here? I'm not attempting to make an excuse. I'm wrong. Mr. Akinobi said there was a Brady violation because the officers didn't reveal that Rosemond said that he had been robbed before by Gant, right? Did I understand his argument correctly? Yes, he did say that. Why then was there no Brady instruction given by the judge? The Brady instruction that was requested was a whole laundry list of things, not collecting blood, not testing the knife blade. Okay, so that stuff maybe could have been excised out of the instruction. Why isn't there an instruction that says they claim that they suffered a Brady violation to wit this, that, and the other thing, and this is what a Brady violation is? The instructions provided that there was a violation of due process if the officers had fabricated evidence, misled the prosecution. Failed to disclose exculpatory evidence? I believe that was in there. I don't see that in there. It was up to the attorneys to argue whether or not, or what the specific Brady violations were. The judge did not have a sua sponte duty to say, and by this instruction I'm referring specifically to the comment that. Are you saying it's in there, or it's not in there, but the judge didn't have to give it, or that the judge had to give it anyway? If the plaintiff submitted a good one, but the plaintiff submitted a bad one, I don't understand. I'm saying before I actually find the language that if the jury was given an appropriate general instruction, then the judge had no sua sponte duty to apply it to the specific facts. That's the attorney's job. I'm puzzled that, I mean, he has a Brady claim, he submits a Brady instruction. He submitted an erroneous Brady instruction. Okay. I know it seems to me the judge has some obligation to try to correct it, or you submit a correct Brady instruction, not just tear it up. The jury was instructed that an officer who knowingly concealed exculpatory evidence was liable for malicious prosecution. My reference to that is to the actual reporter's transcript where he was given the instructions. Am I correct that the judge indisputably gave the wrong instruction with respect to 1985 v. 1983? The only actual erroneous instruction, as opposed to an instruction that didn't direct the verdict, was the 1985 instruction. And since there was no finding of any constitutional violation, there could be no conspiracy. So the error was clearly harmless. And it was also harmless because I'm not sure half the people in this courtroom could even understand the difference between privileges and immunities versus due process, for example. All the more reason there needs to be a lucid, correct instruction. Well, the proper instruction would not have been any more detailed. It just uses that type of language. And because due process in the right to a fair trial was explained and discussed in all of the other instructions, it is simply not reasonable to believe that the jury would have somehow been confused in thinking that conspiracy applied to something different than all of the other causes of action. The principle of the judge. Did the judge, in fact, tell the jury there's no evidence that the case was terminated in the favor of the plaintiffs? The jury made the judge made a comment on the second day of trial that there had been no termination. It was never mentioned. There was never any other comments. And, of course, the jury is instructed not to take the in a sense, not to take anything the judge says to indicate how they should decide. And they were instructed with the language regarding. What were the words exactly? I mean, they can't be told not to take anything the judge says as affecting what they decide. Otherwise, that would mean they should ignore the jury instructions. It's got to be different words. I do have that. Find it for you. I know it's in here, but unfortunately, I'm not finding it very quickly. The standard jury instruction language that the jury is not to take from anything that the judge has said how they are supposed to decide the case. Okay. I've got the boilerplate part. And the malicious prosecution, the point I started to make before my error was pointed out was that I'm reasonably sure, if I remember the record correctly, that when the jury was given the malicious prosecution instruction a second time, which I believe is what Judge Kleinfeld was referring to. Page is bent over. And then this is the first one. Okay. And that way you can answer knowledgeably. Don't you want to look at it rather than working from memory? Well, I think what I'm saying is not. The judge was giving the instruction. The judge is giving the instruction that the plaintiff themselves requested. I believe that's it, isn't it? 336. Yes. No. You have it marked. And that is, I mean, I was not disputing that the language that was given, the. What was your point going to be? The point being that the language that was given was a jury instruction that was requested by the plaintiff. So if, in fact, there was an error in the ambiguity of the language, then it was an invited error. I see. This is the second statement? This is the second iteration was how plaintiffs. This page 336 that you've marked, I believe. And I don't know if it's probably in a different volume that has the plaintiff's requested jury instructions. I think what you're saying is the first time the judge told them, right, there has to be a favorable termination on the merits. And the second time at plaintiff's request, the judge told them wrong, a dismissal by the prosecutor because he thinks he's going to lose is enough. But that's invited error. So even though they're inconsistent, it's not ground for reversal. Have I got your argument right? My argument may be based on my having misread. I did not – I was not aware, I had not noticed, that there was a difference between the original jury instructions that were given prior to deliberations beginning and what was given to the jury in response to their question. I had been under the impression, and I put exactly the same printed page. You must not have read their brief this weekend. So you took the briefs home, but you didn't bother to look at them either, right? I did. In fact, my understanding of their argument in their brief was the contradiction – the contradiction that they were pointing out to was between the judge's comment and what was in the instruction. I had somehow failed to recognize if there was a – that there apparently was a difference between the instruction that was given prior to deliberation and the instruction that was given during deliberation. There's no record of whatever discussion – Before you appear here today? Ask me questions about this specific issue? About this case. Nobody mooted you? No. Will you tell Mr. Sutton if we expect better from the city attorney? I will. Tell him personally, from me. I will send an email as soon as I get to the office. No, no, you talk to him personally. You'll make an appointment. Tell him we'd like him to know that we expect better from the city attorney. I will do that. And, again, I apologize. I – maybe I've been doing this too long and have started to take too many things for granted. I have no other – It doesn't look like you prepared very much at all. You didn't – not familiar with the record? You're not familiar with the briefs? I don't think that's acceptable from a – from any advocate, but particularly not from a public agency. I can apologize for not having brought the excerpts of record with me. And if I did, in fact, somehow misinterpret their argument and, therefore, not recognize the difference between the instructions and that, that is certainly an error. This is what preparation is about, and that's what having people ask you hard questions in your office prepares you to deal with arguments here. And if your office is not doing this for its lawyers, then it's letting you down and letting us down. We expect more. Okay? And you make an appointment with Mr. Tanch and tell him that I said so. I will do that when I return to my office. Okay. We'll hear from – I believe you have about three minutes left.  Yes, Iana. Thank you, Iana. Iana, just briefly regarding the issue of the conspiracy that was addressed by Judge Silverman. The wrong instruction was given, and there was never any discussion. I have no problem with your argument that the instructions are a God-awful mess and they're inconsistent and they don't even make logical sense. I still have a problem with your argument about malicious – about harmless error and the problem that I have is that everything I can find in this case, it looks like the police were sure that Gant was guilty and they used all kinds of unfair tactics along with the prosecution as a whole to get him convicted, but it wasn't because they were trying to frame what they believed to be an innocent man and it wasn't because any of the evidence they put on was known to them to be false. The best you seem to have on the false evidence is that some witnesses go back and forth, like short on the mustache, and that's not the same thing as fabricated evidence. You can certainly use the very general statements of fabrication that we sometimes made to embrace it, but I don't think the facts of any fabricated evidence cases embrace it. As far as the malicious prosecution, it looks like this is one of those cases where the cops say he's guilty. I know he's guilty, and they can't prove it, and maybe he's not guilty. That's my problem. I understand your problem, but when we're looking at a citizen's civil rights, the police have certain obligations with regards to what you do in order to convict somebody. They violated his civil rights. It was a Brady violation. That's why his conviction was set aside. Other than the Brady violation, if we look at the issues in this case regarding the fabrication of evidence, remember they have this competition in the office about clearance, who has the highest clearance ratio, which is assigned to them. And it was in accordance with that that the act that they took was taken. During his testimony, Lynn said, The only case I can remember, you know, Look, for all I know, he's still guilty, and the only reason he's not in prison is that that car stereo burglar went south on the prosecutor. I still don't get it. I mean, everything you're arguing is obviously correct, but I don't see where it leads to the conclusion that civil rights were violated. And that's why his conviction was set aside. In terms of there being a malicious persecution, I've given my definitions of what I believe amounted to fabricated evidence. Like I said, this is not one of those situations where somebody said, You must do this, and then there's hardcore evidence of that. But when we look at the totality of everything that was done in this case with regards to the rights in question, and then you look at our theories of claim, violation of due process rights, there is clear evidence here that warrants reversal that Mr. Gant and Mr. Smith's due process rights were violated. Even regarding something like the Devereux standard that she talked about, we gave instruction on reckless regard. There is a continued investigation of Mr. Smith, even after they had information to know that he was innocent. And regarding the instructions that we gave and the theories of our claim, there is information that they should know he was innocent. What information shows he's innocent? All I see is holes in the proof that he's guilty. Excuse me? What shows that he's innocent? All I see are problems with the evidence that suggests that he's guilty. When they brought in Mr. Schultz for the second identification, and they look at the picture of Schultz of Mr. Wilson, who Mr. Schultz identified initially as, this is the man. Look, if somebody stood up in this courtroom right now and shot somebody else, murdered them, and I was asked for descriptions of everybody that I saw, the fact of the matter is I can see everybody here, and I know I'd make a lot of errors because I'm just bad at remembering faces. That wouldn't show that anybody was innocent. All it would show is that I wasn't a very good eyewitness. That may well be true, but there is a distinction when if somebody is fully bearded and has red locks, and then you say this is the man, and then the other person is clean shaven in the picture you look at. I don't know how else I can explain it. I don't know. I've had people tell me I misremembered when I said somebody was a brunette and they were blonde or what race somebody was. I mean, eyewitnesses tend to, well, Elizabeth Loftus. I have memories of my mother that turn out to be my father. In this instance, I think he goes beyond just the color of the hair in terms of how the person looks. These are police officers who are trained with regards to recognition of people, and they know what physical oddities are. Now, when somebody gives you a description that is totally off from who he identified previously, and then you have all this other evidence to know, I mean, where do I start? If I go back to the whole of short statements, what he saw, seeing the car when this guy was alive, seeing it after he was supposed to be dead, and stuff like that. The officers had reason to know that Smith was not there. He said he saw Smith go behind him, even after this guy, before this guy was even there. You look at the five-minute interval that he took for the victim, Mr. Carpenter, and to get there and back. The officers had enough information to know that what Mr. Schultz said wasn't true with regards to Mr. Smith. They had enough information to know, based on how they listed the information from Mr. Roosman, that what he said about Gant was not true. He was told, we need a second person. And he gave them a second person of the book. And that second person, who is Mr. Smith, does not match any of the stuff. Even Cubias couldn't even identify Mr. Smith. If you say who he saw was about the same build as Mr. Smith, well, they don't look the same on that day, and they don't look the same today. So the officers had reason to know that what Schultz was telling them was not the truth. But they wanted it because they wanted a conviction. The jury had this evidence, right? Excuse me, Your Honor? The jury had this evidence. They had what the judge allowed them to have. And that was one of the reasons why the impeachment of Schultz was very important. Because Schultz, who is an accountant, was made to look like an author boy, as opposed to somebody who had other motives, as opposed to somebody who has lied on this stand. If he got in court that day and said, well, yes, he's clean shaven, consistent with his testimony, no harm, no foul. I would have impeached him with the picture. But he says, oh, in my deposition I said, I do not recall, which is totally different from his case. So because the jurors were not instructed on the correct law, any argument I make goes out, because the judge says arguments of counsel are not evidence. And you only judge this case based on the law that I give you. Thank you. Thank you, Your Honor. Mr. Berger, you know that there will be an audio of this argument on our website within 24 hours, probably less. You'll be sure to have that played for your office.
judges: Kozinski, Kleinfeld, Silverman